IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JILLANE L. POPE,<br><br>                Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; JP MORGAN CHASE BANK & COMPANY, N.A.,; JON PETERSON, an individual; ERIC JOHN, an individual; and KEN LONG an individual,<br><br>                Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 2:23-cv-86 JNP DBP<br><br>District Judge Jill N. Parrish<br><br>Chief Magistrate Judge Dustin B. Pead |

In October 2022, Jillane L. Pope a 73-year-old widow, received a text impersonating someone from the Geek Squad saying she had been charged for her yearly service.[1] Ms. Pope was not a customer of the Geek Squad and proceeded to call the phone number in the text. What then transpired is an unfortunate series of events that led to Ms. Pope wiring $29,000 from her bank account at Wells Fargo to another bank account at JP Mogan Chase Bank that belonged to scammers. This classic text phishing scheme ended up costing Ms. Pope her money.

Frustrated with what occurred, Ms. Pope who is proceeding pro se,[2] then filed a Complaint with this court seeking to hold someone accountable for her losses. Defendants Wells Fargo and JP Morgan Chase now both move to dismiss Ms. Pope's Complaint with prejudice under Rule 12(b)(6). While the court is sympathetic to Ms. Pope's plight, which unfortunately is far too common in our modern society, the law is not on her side to recover her losses from these

---

[1] The Geek Squad is a service product provided by Best Buy that helps consumers with technology issues including setting up and repairing devices such as smartphones, smartwatches, televisions, and computers.

[2] Because Ms. Pope is proceeding pro se, the court construes her pleadings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Defendants. Thus, the undersigned recommends that the Defendant's respective motions be granted.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint.[3] Ms. Pope is a 73-year-old widow residing in Salt Lake City who on October 11, 2022, received a text message notifying her of an auto debit of $239.51 for her yearly Geek Squad service fee. Realizing she had no subscription with Geek Squad, Ms. Pope called the number on the text. Jon Peterson answered the call. Mr. Peterson informed Ms. Pope that he would refund her the $239.51, as well as another $239.51 she had been charged for the prior year's services. Ms. Pope was instructed to log onto her computer and then Mr. Peterson would refund her $500 in a series of steps. First $300 would be refunded to Ms. Pope's account followed by an additional $200 after she entered a series of numbers. Ms. Pope failed to recognize that this was the beginning of a scam to take her money.

After logging into her computer, Ms. Pope typed in $300.00 as she was instructed. Her screen then went erratic and Mr. Peterson, who sounded alarmed, informed Ms. Pope that $30,000 had mistakenly been deposited into her checking account due to Ms. Pope's failure to include a decimal point in the right place. Mr. Peterson told Ms. Pope it was a horrible error and although he did not blame her, he would lose his job if Ms. Pope did not fix the error. Ms. Pope needed to wire back the $30,000 payment immediately and that if she did so, Mr. Peterson would

---

[3] In considering a motion to dismiss, "[a]ll well-pleaded factual allegations in the complaint are accepted as true, … and viewed in the light most favorable to the nonmoving party." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Since Ms. Pope is proceeding pro se, if the court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

keep his job and she could keep $1000 for the inconvenience. Mr. Peterson prayed on Ms. Pope's emotions complementing Ms. Pope for her honesty and willingness to help save his job.

Ms. Pope then proceeded to drive to her local Wells Fargo branch while talking with Mr. Peterson. After going inside, a teller named Tessa Stransky greeted Ms. Pope and offered to help her. During their conversation, and presumably because Ms. Pope was seeking to wire funds, Ms. Stransky mentioned the prevalence of wire fraud. This did not deter Ms. Pope and she proceeded to follow Mr. Peterson's specific instructions, which included telling Ms. Stransky that the money was for an operating expense rather than a transfer error. The $29,000 was to be wired to Mr. Peterson's supposed contact in the accounting department, Ken Long, who had an account at JP Morgan Chase. At approximately 3:57 just before the deadline to send wires, the money was sent to Mr. Long's account.

After leaving the bank Mr. Peterson asked Ms. Pope to send a photocopy of her driver's license and the wire documents. Ms. Pope then became suspicious and refused the request. She returned to Wells Fargo and informed Ms. Stransky and the bank manager that she believed she was being defrauded. Ms. Stansky replied telling Ms. Pope she thought it was "unusual that $30,000 was taken from her savings and deposited into her checking."[4] The supposed error of $30,000 sent to Ms. Pope's checking account from Geek Squad, was in fact, a transfer of Ms. Pope's own money from her savings account to her checking account. Ms. Pope failed to notice the inter account transfer.

Ms. Pope requested Ms. Stransky notify the Wells Fargo fraud department and trace the wire transfer. The trace revealed that it went to an account at JP Morgan Chase bank. Ms. Pope tried to have Wells Fargo intervene and block the wire transfer, but it was too late. Ms. Pope left

---

[4] Complaint ¶20.

Wells Fargo and went to the nearby JP Morgan Chase branch and informed them about the fraud. Ms. Pope talked with a JP Morgan Chase manager seeking to freeze Mr. Long's account where the money was supposedly transferred. The manager declined informing Ms. Pope that she was not their customer, and he could not freeze an account simply on her request.

The following day Ms. Pope returned to Wells Fargo and worked with the bank manager to try and reverse the transaction. This failed. In addition, over the next few weeks, Ms. Pope worked with others including informing the FBI and the Salt Lake City Police Department fraud division about what happened. None of these efforts proved fruitful and on October 20, 2022, Ms. Pope received a letter from the Wells Fargo fraud division informing her that the inquiry had been closed. In the letter it noted Ms. Pope authorized the wire transfer for $29,000.00 to Ken Long and the money could not be returned.

Ms. Pope then filed this lawsuit based on the premise that Wells Fargo and JP Morgan Chase bank knew a theft was in process and failed to prevent the crime in violation of their alleged duties. Ms. Pope brings the following claims against Wells Fargo and JP Morgan Chase bank: 1) violation of the electronic fund transfer act (EFTA) 15 U.S.C. § 1693 *et seq*; 2) negligence; 3) common law fraud; 4) violation of suspicious activity report; and 5) a claim of conspiracy against JP Morgan Chase and the other named Defendants that are not part of this motion.[5]

---

[5] Ms. Pope brings additional claims against Jon Peterson, Eric John, and Ken Long who were the alleged fraudsters in this scheme. The court does not address those claims in this decision.

**LEGAL STANDARD**

Under Rule 12(b)(6), the court may dismiss a pleading for "failure to state a claim upon which relief may be granted."[6] The court's function when considering a Rule 12(b)(6) motion is not to weigh potential evidence that may be presented at trial, rather it is to "'assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'"[7]

In considering a motion to dismiss for failure to state a claim, the court accepts as true all well-pleaded factual allegations viewing them in the light most favorable to the plaintiff.[8] Legal conclusions and "threadbare recitals of the elements of a cause of action", however, are insufficient.[9] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] Because Plaintiff is proceeding pro se, the court uses a relaxed pleading standard in comparison to a trained attorney.[12]

---

[6] Fed. R. Civ. P. 12(b0(6).

[7] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); *see also Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271, 1278 (D. Utah 2020) (applying the applicable standard).

[9] *Iqbal*, 556 U.S. at 678.

[10] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[11] *Id.* at 663 (citing *Twombly*, 550 U.S. at 556).

[12] *Hall v. Bellmon*, 935 F.2d at 1110.

**DISCUSSION**

**I.      Wells Fargo's Motion to Dismiss Should be Granted**

**A.  Plaintiff's EFTA claim fails**

Wells Fargo argues Plaintiff's EFTA claim fails for two reasons. First, EFTA is not applicable to wire transfers under the language of the statue and regulations. Second, EFTA does not apply to in-person branch transactions because such transfers are not an "electronic fund transfer."

Ms. Pope seeks an exception arguing there were two transfers. One initiated by her (the consumer) "who was under the influence and control of a scammer with fraudulent intent", and another by Wells Fargo to JP Morgan Chase. Because she was under the influence and control of a scammer, then it "made the transfer an [unauthorized] electronic fund transfer."[13] Plaintiff further relies on EFTA Regulation E that requires a financial instruction to take certain actions after receiving oral or written notice of an error. According to Plaintiff, the "compelling fact" here is that when Wells Fargo's fraud department was alerted to the fraud, or an error of transfer while the transfer was in process, it triggered Regulation E, which it violated.

The language of EFTA and the regulations support Wells Fargo's position. Under EFTA, an "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a

---

[13] Op. p. 7 (alteration in original), ECF No. 27.

financial institution to debit or credit an account."[14] Regulations clarify what is excluded from coverage under EFTA. In 12 C.F.R. § 205.3(c) it provides that the "term electronic fund transfer does not include: … (3) Wire or other similar transfers. Any transfer of funds through Fedwire or through a similar wire transfer system that is used primarily for transfers between financial institutions or between businesses."[15]

Ms. Pope's efforts to find an exception fail under the plain language of EFTA. The fact that there were "two transfers" or that Ms. Pope was allegedly under the influence of a scammer, do not allow the wire transfer here to fall with EFTA. Ms. Pope's reliance on Regulation E and *Widjaja v. JPMorgan Chase Bank, N.A.*,[16] are likewise unpersuasive because ACH (automated clearing house) transfers are different than wire transfers. ACH transfers are not excluded under EFTA and clearly fall within Regulation E. Further, the case here did not involve a transfer like that in *Widjaja*. Thus, Ms. Pope's arguments fail. The court finds this case more analogous to those relied on by Wells Fargo. In *Wright v. Citizens Bank of East Tennessee,*[17] a case from the Sixth Circuit, that court held EFTA did not apply to the plaintiff's instructions regarding a same-day wire transfer that was not performed until the next morning because it involved a wire transfer through Fedwire or similar system. And in *Wachter v. Denver Nat. Bank*,[18] a court from this Circuit held that EFTA did not apply to a wire transfer because the plaintiff "initiated her wire transfer through contact with the bank's personnel [and] the face-to-face nature of this personal banking transaction removes it from the scope of the Act's coverage."[19]

---

[14] 15 U.S.C. § 1693a(7).

[15] 12 C.F.R. § 205.3(c)(3).

[16] 21 F.4th 570 (9th Cir. 2021).

[17] 640 Fed. Appx. 401 (6th Cir. 2016).

[18] 751 F.Supp. 906 (D. Colo. 1990).

[19] *Id.* at 908.

Thus, Ms. Pope's EFTA claims fails as to Wells Fargo.

**B. Plaintiff's negligence claim fails**

Plaintiff's second cause of action alleges Wells Fargo was negligent as it owed a duty to Plaintiff to stop what happened. In support, Plaintiff sets forth facts such as failing to warn, failing to adequately investigate the unauthorized transaction, failing to take appropriate steps to avoid the transaction, not implementing sufficient safeguards against scams, and failing to reverse the transaction following her dispute that all support her claim of negligence. Wells Fargo attacks Plaintiff's negligence claim on two primary fronts. First the claim is pre-empted by UCC Article 4A and second, Wells Fargo did not owe Ms. Pope a tort duty of care.

UCC Article 4A was adopted in Utah law and codified in Utah Code Ann. § 70A-4a-101, *et seq.* It "governs a specialized method of payment referred to in the Article as a funds transfer but also commonly referred to in the commercial community as a wholesale wire transfer."[20] A "funds transfer" means a series of transactions "beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order."[21] Under the terms of the statute, Ms. Pope is considered the originator as she is the "sender of the first payment order."[22] Wells Fargo is the "originator's bank" and the "receiving bank" of the payment order from Ms. Pope. Under Article 4A, a "receiving bank is not the agent of the sender or beneficiary of the payment order it accepts, or of any other party to the funds transfer, and the bank owes no duty to any party to the funds transfer except as provided in this chapter or by express agreement."[23] Thus, according to Wells Fargo, because Article 4A establishes the standards of

---

[20] Utah Code Ann. § 70A-4a-102.

[21] *Id.* at 70A-4a-104.

[22] *Id.*

[23] Utah Code Ann. § 70A-4a-212.

care and limits on liability for wire transfers, common law claims for negligence are not

actionable. Wells Fargo cites to a number of cases from around the country supporting this

proposition.[24]

The Utah UCC was enacted to "simplify, clarify, and modernize the law governing

commercial transactions" as well as to "make uniform the law among the various

jurisdictions."[25] Principles of law or equity in place prior to its enactment remain intact "unless

displaced by the particular provisions" of the Utah UCC.[26] Plaintiff points the court to section 3

of Utah's UCC arguing it governs this case. Section 3, however, governs negotiable instruments

such as a check, it does not govern wire transfers. The Utah UCC addresses the liabilities and

duties of a receiving bank such as Wells Fargo in this case.[27] Plaintiff has not provided the court

with any basis or support to find these provisions do not displace any prior common law claims

for negligence. Accordingly, Ms. Pope's negligence claims are barred by the Utah UCC.

In addition, to establish a claim for negligence in Utah four elements are required: "a

duty, breach of that duty, causation, and damages."[28] Plaintiff's facts while unfortunate, do not

support or establish a basis for Wells Fargo owing her a duty. Ms. Stransky, the Wells Fargo's

teller who assisted Ms. Pope, mentioned the prevalence of wire fraud. Mentioning the prevalence

---

[24] *See, e.g., Callegari v. Blendtec, Inc.*, No. 2:18-CV-308-DB, 2018 WL 5808805, at *6 (D. Utah Nov. 6, 2018) (dismissing certain causes of acton for breach of common law express and implied warranties because they were displaced by the Utah UCC); *Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat. Bank*, 390 N.J. Super. 199, 204 (App. Div. 2007) ("the UCC displaces the common-law where reliance on the common law would thwart the purposes of the UCC"); *Halla v. Norwest Bank Minnesota, N.A.*, 601 N.W. 2d 449, 451 (Minn. App. 1999) ("For the U.C.C. to be effective, parties in commercial transactions must be able to rely on the remedies provided by the Code. We see no reason to sacrifice the certainty and consistency of the U.C.C. remedies to preserve common law remedies for conversion of negotiable instrument"); *Crawford v. JP Morgan Chase Bank*, NA, 08-CV-12634, 2009 WL 1913415, at *5 (E.D. Mich., June 30, 2009) ("The UCC also displaces the common law when, 'reliance on the common law would thwart the purposes of the Code.'") (citation omitted).

[25] Utah Code Ann. § 70A-1a-103.

[26] *Id.*

[27] Utah Code Ann. §70A-4a-212.

[28] *McCartney v. United States*, 31 F. Supp. 3d 1340, 1343 (D. Utah 2014).

of wire fraud, however, did not create a duty to stop Ms. Pope from moving forward with the transfer. Indeed, had she sought to stop her, Wells Fargo may have faced liability for not following Ms. Pope's instructions.

### C. Plaintiff has failed to establish a fraud claim

Plaintiff alleges Wells Fargo committed common law fraud when it failed to prevent the theft by not properly questioning her about wiring the money. Even after the wire occurred Wells Fargo had "over 24 hours to intercede and prevent its completion."[29] Thus, Wells Fargo engaged in fraud.

To state a claim for fraud, Ms. Pope must allege

(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[30]

A heightened pleading standard applies to fraud claims.[31] In meeting this standard, "a party must state with particularity the circumstances constituting [the] fraud or mistake."[32] Accordingly, Rule 9(b) generally requires a plaintiff "'to identify the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequence thereof.'"[33]

---

[29] Compl. ¶109.

[30] *Gaddy v. Corp of President of Church of Jesus Christ of Latter-Day Saints*, 451 F.Supp.3d 1227, 1235 (D. Utah 2020) (citing *Webster v. JP Morgan Chase Bank, NA*, 2012 UT App. 321, ¶ 16, 290 P.3d 930).

[31] *See id.*

[32] Fed. R. Civ. P. 9(b).

[33] *Hafen v. Strebeck*, 338 F. Supp. 2d 1257, 1263 (D. Utah 2004) (quoting *Karacand v. Edwards*, 53 F.Supp.2d 1236, 1241 (D.Utah 1999)).

Plaintiff fails to adequately plead the elements of fraud against Wells Fargo. The factual allegations that Wells Fargo did not prevent the fraud while it was in progress are not enough. There are no allegations concerning alleged misrepresentations made by Wells Fargo that Ms. Pope relied on. A teller mentioning the prevalence of wire fraud did not induce Ms. Pope to complete the transfer. Thus, her common law claim for fraud fails.

Seeking to overcome multiple flaws in her common law fraud claim, Ms. Pope shifts to alleging third-party fraud in her opposition. Yet, her new theory raised in response to Wells Fargo's arguments, is not set forth with the requisite specificity required under Rule 9(b). And Utah does not recognize a claim for aiding and abetting fraud.[34] In a last-ditch effort to save her fraud claims, Plaintiff cites to *Barclays Bank v. Quincecare Ltd.* a 1992 case from the United Kingdom, that determined a bank owed a duty of care to a customer when following their payment instructions. *Quincecare* has no precedential or persuasive value in this court, and the court cannot simply change Utah policy as Plaintiff suggests, to recognize such a claim.

Ms. Pope's fraud claims fail to satisfy the Rule 12(b)(6) standards.

### D. Plaintiff cannot bring a cause of action for a violation of the suspicious activity report.

Plaintiff's final cause of action alleges Wells Fargo violated the suspicious activity report regulation (12 C.F.R. § 208.62) (SAR) of the Bank Secrecy Act (31 § U.S.C. 5311). In essence neither Wells Fargo nor JP Morgan Chase complied with the SAR regulations. However, a private plaintiff like Ms. Pope lacks a cause of action for alleged violations of the Bank Secrecy Act or SAR's reporting requirements.[35] Plaintiff argues this claim "is not intended as a private

---

[34] *Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1253, 2017 WL 52577 (D. Utah 2017) ("Utah courts have not yet recognized a claim for aiding and abetting fraud.").

[35] *AmSouth Bank v. Dale*, 386 F.3d 763, 777, 2004 Fed. App. 0321P, 2004 WL 2092997 (6th Cir. 2004) (noting the Bank Secrecy Act does not create a private right of action); *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*,

cause of action … but to support the allegation that [Wells Fargo] failed to file a SARs claim."[36] This argument is unpersuasive and does not allow the claim to survive.

## II.     JP Morgan Chase's Motion to Dismiss Should be Granted

Ms. Pope's claims against JP Morgan Chase fare no better than her claims against Wells Fargo. They fail for the same reasons set forth in detail previously. EFTA is inapplicable to the wire transfer here. UCC Article 4A precludes her claims for common law negligence against JP Morgan Chase. Any alleged duty is woefully lacking in the factual allegations as Ms. Pope is not even a customer of JP Morgan Chase. The fraud claims lack certain elements and requisite particularity. And there is no private right of action under the Bank Secrecy Act to bring her claims. Ms. Pope brings an additional claim against JP Morgan Chase alleging conspiracy, that JP Morgan Chase acted in concert with the scammers to harm Plaintiff.

To bring a claim of civil conspiracy a plaintiff must demonstrate the following five elements: "'(1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result thereof.'"[37] In addition, under Utah law, "'[t]he claim of civil conspiracy requires, as one of its essential elements, an underlying tort. Thus, in order to sufficiently plead a claim for civil conspiracy, a plaintiff is obligated to adequately plead the existence of such a tort.'"[38] The factual allegations in Plaintiff's Complaint aver that JP Morgan

---

[36] Op. p. 19.

2019 WL 3503109, at *7 (N.D. Cal. Aug. 1, 2019) (stating "courts are unanimous in holding that there is no private right of action under the BSA or Patriot Act" and collecting cases); *Fox v. California Franchise Tax Bd.*, 2010 WL 56094, at *6 (D. Colo. Jan. 5, 2010), aff'd, 443 F. App'x 354, 2011 WL 4792865 (10th Cir. 2011) ("the Bank Secrecy Act does not provide the plaintiff with a private cause of action").

[37] *Albright v. Attorney's Title Ins. Fund*, 504 F. Supp. 2d 1187, 1208 (D. Utah 2007) (quoting *Alta Indus. v. Hurst*, 846 P.2d 1282, 1290 n. 17 (Utah 1993)).

[38] *Chappell v. SkyWest Airlines, Inc.*, No. 4:21-CV-00083-DN-PK, 2021 WL 5882256, at *3 (D. Utah Dec. 13, 2021) (quoting *Puttuck v. Gendron*, 119 P.3d 971, 978 (Utah Ct. App. 2008)).

Chase is liable for conspiracy because it knew a scam was ongoing, was warned of that scam, and despite those warnings, it did not stop the scam. There is nothing before the court establishing a concert of action or a meeting of the minds between the named individual fraudsters and JP Morgan Chase. Moreover, the allegations fail to allege sufficient facts to state a claim for fraud against JP Morgan Chase. This failure further undermines Plaintiff's claim for civil conspiracy.[39]

REPORT AND RECOMMENDATION

Based upon the foregoing, the undersigned recommends that Wells Fargo's and JP Morgan Chase's respective Motions to Dismiss be GRANTED.

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within fourteen (14) days of being served with a copy, any party may serve and file written objections. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 27 December 2023.

_____
Dustin B. Pead
United States Magistrate Judge

---

[39] *See id.*